STATE EX REL. CITY OF MANITOWOC, Respondent, v. PO-
LICE PENSION BOARD FOR THE CITY OF MANITOWOC,
Defendant: KASTEN, Intervenor and Appellant.*

*No. 233. Argued November 1, 1972.—Decided January 3, 1973.*
(Also reported in 203 N. W. 2d 74.)

* Motion for rehearing denied, without costs, on March 27, 1973.

For the appellant there were briefs by *John H. Bowers, James R. Hill,* and *Lawton & Cates,* all of Madison, and oral argument by *Mr. Hill.*

For the respondent there was a brief and oral argument by *Everett B. Hale,* city attorney of Manitowoc.

CONNOR T. HANSEN, J. Does the term "monthly compensation" as used in sec. 62.13 (9) (c) 3, Stats., include employer contributions to the pension fund and health and life insurance in computing the employee's compensation for pension purposes?

The city of Manitowoc has a population of approximately 33,400 people. Under sec. 62.05 (1) (c), Stats., cities of 10,000 and less than 39,000 are cities of the third class. Being a third-class city, the respondent falls within the provisions of sec. 62.13 (9) (a) 1. This sec-

tion sets out what sources make up the police pension fund. Sec. 62.13 (9) (a) 5 explicitly states that the pensions provided for by this section shall be paid in full only from the revenue received from the sources enumerated in sec. 62.13 (9) (a) 1. These enumerated sources of revenue are therefore exclusive.[4] This section does not mention, infer or imply that Blue Cross insurance, life insurance or pension contributions paid by the city are included as a source of revenue in making such a determination. And these three items cannot be reasonably said to fall within the meaning of "4 per cent of the salary of each member of the department." On the other hand, base pay, longevity pay, night shift pay and holiday pay appear to be within the meaning of "salary" under sec. 62.13 (9) (a) 1. To support this proposition one only needs to look at sec. 62.135 (2), which states:

". . . The pensions and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in sections 61.65 and 62.13 and then in effect in such city or village shall be obligations of such benefit contracts on the part of the city or village and the board of trustees and each fireman and policeman and beneficiary having such a benefit contract shall have a vested right to such pensions and other benefits and they shall not be diminished, impaired or increased by subsequent legislation nor by any other means."

\* [In light of this provision a collective bargaining agreement cannot increase the sources of revenue that go into the pension fund or be determinative as to what "revenue" will be paid in order to calculate the applicant's pension because the "agreement" is another "means" within this section.] This is again reiterated and re-enforced by sub. (4) of sec. 62.135, Stats.—that is, sec. 62.13 (9) shall not be amended so as to increase or

---

[4] Except tax levies as provided for in sec. 62.13 (9) (a) 5, Stats.

\* Sentence modified on rehearing. *See:* post, p. 612a.

decrease the contributions of policemen into the policemen's pension fund.

As a result, the collective bargaining agreement cannot alter the legislative pronouncement. Art. 8 of the agreement which states that ". . . $40 shall be used in computing the monthly compensation for pension purposes" is unenforceable as contrary to the legislative intent and policy under sec. 62.13 (9) (a), Stats., and subs. (2) and (4) of sec. 62.135. The reason is that art. 8 is an attempt to increase the sources of revenue which these statutory provisions have sought to prevent.

Appellant complains though, that since sec. 62.13 (9) (c) 3, Stats., states that "monthly compensation" is the test to determine his pension, then the court must include all insurance premiums and pension contributions. The basis for this position is that "compensation" and "salary" are not synonymous but rather two different things. The phrase "one-half of his monthly compensation" [5] could only mean "salary" in order to be consistent with the meaning of sec. 62.13 (9) (a) 1 and 5 therein. Also, other provisions of ch. 62 indicate that the legislature used the words "compensation" and "salary" as interchangeable and synonymously. For example, sec. 62.13 (7) is headed "Compensation," but then refers to such compensation in the terms of the word "salaries" of the police chief and his subordinates. This is further supported by analogy to sec. 62.13 (9a) which deals with fourth-class cities. That section states that in cities of the fourth class the council may from time to time provide for the pensioning of members of the police department. Such pension shall not exceed one-half the salary of such officer at the time of his pensioning or death. To accept appellant's position that "monthly compensation" means more than "salary" would cause the question of why the legislature made such distinction

---

[5] Within the meaning of sec. 62.13 (9) (c) 3, Stats.

between third- and fourth-class cities. If this was the case then, as respondent states:

". . . the legislature is being extremely unfair, first to the police officers of cities of the fourth class who get short changed and secondly, to cities of the third class because of the additional financial burden they must bear. Why should there be a difference for a city which has a population of ten thousand and one, and another city with a population of nine thousand nine hundred and ninety-nine. We believe what the legislature had in mind when the legislature said one-half of the salary in section 62.13 (9a) Wisconsin Statutes they meant the same thing as when they said one-half his monthly compensation in section 62.13 (9) (c) 3."

This is not the first time the terms "compensation" and "salary" have been interpreted as synonymous. The synonymity of these words has been so interpreted in our constitution with respect to compensation for services of public officers and judges while in office. *Milwaukee County v. Halsey* (1912), 149 Wis. 82, 136 N. W. 139, and *Angelo v. Railroad Comm.* (1928), 194 Wis. 543, 217 N. W. 570. Sec. 62.13 (9) (c) 3, Stats., in and of itself by its prohibitive provisions, indicates the synonymity of these terms—that is, when there is an increase in compensation in the year preceding his retirement or when a member has been promoted in rank within the year preceding his retirement which increases his compensation, then these increases shall be disregarded in computing the amount of his pension.

The appellant argues that simply because the word "compensation" as used in the constitution adopted in 1848 has been construed by this court to be synonymous with salary, it does not follow that it has to have the same meaning in a statute in 1972. The argument continues, ". . . When our constitution was ratified in 1848, the payment of cash for services rendered was the only form of compensation in general use. No one worried

much then about employer-paid insurance premiums or pension contributions. It is thus quite proper to say that the words salary and compensation meant the same thing in 1848." We are further admonished to construe the statute consistent with the meaning the words had when the legislature adopted the statute.

The legislature has long recognized a need for pensions for firemen and policemen. A cursory examination of the history of the statute reveals that for at least the last fifty years the legislature has limited the police pension benefits to one half of the monthly "compensation" of the officer at the time he retires. To follow the argument of the appellant, it is highly probable the legislature fifty years ago did not consider that compensation included such items as employer-paid insurance premiums and pension contributions.

Both parties cite several statutes, some of them dealing with pensions and some not, which used the words "compensation," "salary" and "earnings." These references are of very little assistance to us because the words in some sections are obviously interchangeable and in others the subject matter of the section is unrelated and words used are of no help in determining whether the compensation and salary are synonymous in the statute now under consideration.

Retirement pensions for public employees have become commonplace. They are justified, in part at least, by a legislative recognition as inducements to attract and keep competent qualified and industrious employees in public service. The question of whether pensions for public employees should be provided is clearly a public policy question to be decided by the legislature. Likewise the eligibility requirements, the amount of the pension and the factors used to determine the amount of the pension are legislative prerogatives and not matters to be determined by the courts. While as a generalization it can be said that uniformity of pensions for public employees is desirable, the legislature can, as a matter of

special inducement for well-defined classifications of employees, including policemen, provide some special or additional benefits.

We are convinced that at the time the legislature provided for a pension equal to one half of the officer's monthly compensation, the legislature intended it to mean his monthly salary.

If, in view of modern day employment inducements, fringe benefits such as insurance premiums, pension fund contributions and perhaps others are to be included in the formula for calculating pension benefits for police and firemen, the legislature, as a matter of desirable public policy, can so provide. The court cannot.

*By the Court.*—Judgment affirmed.

The following memorandum was filed on March 27, 1973.

PER CURIAM. *(on motion for rehearing).* The briefs for rehearing raise no issue that was not fully argued and considered on appeal. However, we modify certain language of the opinion. As set forth at page 609 of the opinion, sec. 62.135 (2), Stats., provides:

". . . The pensions and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in sections 61.65 and 62.13 and then in effect in such city or village shall be obligations of such benefit contracts on the part of the city or village and the board of trustees and each fireman and policeman and beneficiary having such a benefit contract shall have a vested right to such pensions and other benefits and they shall not be diminished, impaired or increased by subsequent legislation nor by any other means."

The opinion further states:

"In light of this provision a collective bargaining agreement cannot increase the sources of revenue that go into the pension fund or be determinative as to what 'revenue' will be paid in order to calculate the applicant's

pension because the 'agreement' is another 'means' within this section. . . ."

This statement could be construed to mean that a collective bargaining agreement can have no effect upon the amount of an applicant's pension; therefore, the following sentence is substituted:

"In light of this provision a collective bargaining agreement does not necessarily increase the sources of revenue that go into the pension fund, nor is it determinative as to what forms of revenue are encompassed within the term 'compensation' when calculating an applicant's pension. While the amounts of the respective revenues comprising 'compensation' may be determined through a collective bargaining agreement, subject to sec. 62.13 (9) (c) 3, Stats., this court cannot and will not look to the collective bargaining agreement for the definition of the term 'compensation.' "

The motion for rehearing is denied, without costs.