DR. BARBARA THOMPSON, State Superintendent Department of PublicInstruction
Your predecessor requested my opinion on two questions regarding the authority of school boards to pay increased salary increments in consideration for early retirement of teachers. The questions are:
 "1. Does a school board unilaterally have the authority to provide for an early retirement policy by which a teacher is given an increment or sum in addition to the regular contract amount in return for choosing an early retirement option?
 "2. Would a school board be authorized in the same situation described in Question 1 when the provision for early retirement is included in the collective bargaining agreement negotiated by the board and teachers?"
Section 118.21, Stats., requires school boards to contract in writing with teachers. Such section states in part:
 "118.21 Teacher contracts. (1) The school board shall contract in writing with qualified teachers . . . . Such contract, in addition to fixing the teacher's wage, may provide for compensating the teacher for necessary travel expense in going to and from the school house at a rate not to exceed 6 cents per mile . . . .
"* * *
 "(3) School boards may provide in the contracts of teachers of agricultural and homemaking courses for payment out of *Page 17 
school district funds for services performed outside the school district and connected with the performance of their regular teaching duties, and for travel expenses connected with such services.
 "(4) School boards may give to any teacher, without deduction from his wages, the whole or part of any time spent by him in attending a teachers' educational convention, upon the teacher's filing with the school district clerk a certificate of attendance at the convention, signed by the person or secretary of the association conducting the convention."
Subchapter IV of ch. 111, Stats., establishes the right of municipal employes and employers to confer and negotiate concerning "wages, hours and conditions of employment" and to reduce such negotiations to a binding contract. Subsection 111.70
(2), Stats., provides:
 "(2) RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection . . ."
Collective bargaining is defined in sec. 111.70 (1) (d), Stats., as:
 "(d) `Collective bargaining' means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment with the intention of reaching an agreement, or to resolve questions arising under such an agreement . . . ." (Emphasis added.)
By virtue of the definitions contained in sec. 111.70 (1) (a) and (b), Stats., defining municipal employer and municipal employe, sec. 111.70, Stats., is applicable to teachers and school boards.
Though the payment contemplated in your question may not, under a strict construction of sec. 111.70 (1) (d), Stats., fit under the heading of wages, it is part of the wage structure and surely is one of the "conditions of employment." Additionally, retirement plans are proper subjects for bargaining under sec.111.70, Stats., within the *Page 18 
broad interpretation of "wages, hours and conditions of employment" referred to in Muskego-Norway C.S.J.S.D. No. 9 v.WERB (1967), 35 Wis.2d 540, 151 N.W.2d 617 and Joint SchoolDistrict No. 8 v. Wisconsin E. R. Board (1967), 37 Wis.2d 483155 N.W.2d 78. The court in both of these cases held that a broad interpretation of such terms is warranted and that other sections of the statutes should, insofar as possible, harmonize with sec.111.70, Stats.
Since, therefore, a school board has the duty under sec.118.21, Stats., to "contract in writing with qualified teachers" and since the statutes do not prohibit bargaining for early retirement policy, the school board is not acting unilaterally in providing for an early retirement policy. The question more properly stated would ask whether a school board has the power to negotiate and enter into a contract covering the subject of early retirement provisions when dealing with the teacher (1) as an individual or (2) as a member of a bargaining unit. In my view, the school board has authority in both instances to contract regarding early retirement including giving the teacher an additional increment in return for early retirement.
The court in Joint School District No. 8, supra, clearly stated that there were items included in the term "wages, hours and conditions of employment" already specifically determined by statute and therefore not proper subjects of negotiation. At p. 492 the court said:
 "These items determined by statute, of course, cannot be changed by negotiation. But what is left to the school boards in respect to the school calendar is subject to compulsory discussion and negotiation. As stated in Norwalk Teachers' Asso. v. Board of Education
(1951), 138 Conn. 269, 277, 83 Atl. 2d 482, `. . . the plaintiff may organize and bargain collectively for the pay and working conditions which it may be in the power of the board of education to grant.'"
I conclude therefore, that the court in the above case provided the precedent that the phrase "wages, hours and conditions of employment" should be broadly construed with the result that the payments contemplated should be included as a proper subject for bargaining unless prohibited by statute.
The rule is that school statutes prevail over general employe statutes in instances where both cannot be given effect or *Page 19 
harmonized. Board of Education v. WERC (1971), 52 Wis.2d 625,640, 191 N.W.2d 242. Sections 118.21, 118.22 and 121.17, Stats., do not prohibit the subject payments, nor am I aware of any other section of the statute which may be construed to constitute such a prohibition. In construing the application of sec. 111.70, Stats., the Supreme Court has held (1) That in the absence of a statutory prohibition, precluding a municipality from entering into an agreement to arbitrate grievances, and having, pursuant to sec. 111.70 entered into such an agreement, a municipality was required to abide by its agreement to arbitrate grievances. Local1226 v. Rhinelander (1967), 35 Wis.2d 209, 151 N.W.2d 30, (2) Notwithstanding certain requirements of the school calendar set by statute, what is left to the school boards in respect to such calendar was a proper subject of negotiation. Joint SchoolDistrict No. 8 v. Wisconsin E. R. Board, supra, and (3) Whether educational conventions are to be considered in-service or school days and the compensation for such days are within the definition of wages, hours and conditions of employment, Board of Educationv. WERC, supra.
Sections 118.21 and 118.22, Stats., provide specific authority for school boards to contract with teachers as to wages, travel expenses, payment for services rendered outside the school district and payment during attendance at conventions. I find no express authorization anywhere in the statutes to make the type of payment which is the subject of your inquiry. Apparently, however, the legislature has construed "wages" as used in sec.118.21, Stats., to include more than just the monetary payment for the teachers work. Section 121.17 (1) (c) 1, Stats., requires that the contract between the school board and the teacher contain specific provisions for leave of absence due to sickness in order to qualify the school district for state aids. Section118.21, Stats., however, makes no reference to sick leave.
In State ex rel. Manitowoc v. Police Pension Bd. (1973),56 Wis.2d 602, 203 N.W.2d 74, the court construed the terms "salary" and "compensation" as used in sec. 62.13, Stats. The question before the court was whether the term "monthly compensation" included insurance premiums and pension contribution made by the employer. The court stated at p. 61 2a: *Page 20 
 "We are convinced that at the time the legislature provided for a pension equal to one half of the officer's monthly compensation, the legislature intended it to mean his monthly salary.
 "If, in view of modern day employment inducements, fringe benefits such as insurance premiums, pension fund contributions and perhaps others are to be included in the formula for calculating pension benefits for police and firemen, the legislature, as a matter of desirable public policy, can so provide. The court cannot."
Conversely in the instant situation there is no indication of legislative intent to mandate a restrictive definition of the term "wages." "Wages" is defined in Webster's Third New International Dictionary at p. 2568 in part as:
 "A pledge or payment of usu. monetary remuneration by an employer esp. for labor or services usu. according to contract and on an hourly, daily or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization and other benefits; . . ."
There seems to be little rationale for a restrictive construction of the use of the term wages in sec. 118.21, Stats.
I, therefore, conclude on the basis of the above discussion that school boards have authority to include in contracts with teachers an increment in return for choosing early retirement. Such authority exists regardless of whether the contract is or is not the result of collective bargaining.
RWW:WMS